UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JENNIFER BRUNEY RICHARD, INDIVIDUALLY, AND ON BEHALF OF THE ESTATE OF DEWEY BRUNEY AND ALL OTHERS SIMILARLY SITUATED | * * * | CIVIL ACTION NO. 2006-1452 |
| VS. | * * | JUDGE MINALDI |
| WAL-MART STORES, INC., AND WAL-MART STORES, INC. CORPORATION GRANTOR TRUST, THROUGH WACHOVIA BANK OF GEORGIA, N.A. | * * * | MAGISTRATE JUDGE WILSON |
| * * * * * * * * * * * * | * | JURY TRIAL |

**MEMORANDUM IN SUPPORT OF
WAL-MART'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AS TO PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT**

**MAY IT PLEASE THE COURT:**

This Court has *sua sponte* requested a motion for summary judgment by defendants, Wal-Mart Stores, Inc. and Wal-Mart Stores, Inc. Corporation Grantor Trust, through Wachovia Bank of Georgia, NA (hereinafter collectively referred to as "Wal-Mart" or "Defendants"), directed as to plaintiff's [Jennifer Bruney Richard] "unjust enrichment" claim. As the Court noted in its March 28, 2007, Memorandum Order,

> "In *Baker v. Maclay Properties Co.*, 94-1529 (La. 1/17/95), 648 So.2d 888, 897, the Louisiana Supreme Court enumerated the requirements that must be shown to prove such a claim for unjust enrichment:
>
>> The five requirements for a showing of unjust enrichment ... are: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and

impoverishment, and (5) there must be no other remedy at law available to plaintiff." [Footnote omitted].

The Court's focus in its March 28, 2007, directive was on the essential "impoverishment" requirement of plaintiff's claim; however, that element is intertwined with certain other requisite components of the claim, which are likewise addressed in the instant motion. As demonstrated herein, plaintiff cannot maintain a cause of action for unjust enrichment because many of these required elements, including, particularly, that of "impoverishment," are lacking.

## I. Background

A background of the underlying factual predicate of this case is instructive. Significantly, several other courts have considered the very issue presented here and have held under similar factual circumstances that a liable claim for "unjust enrichment" cannot be maintained. *See, e.g., Tillman v. Camelot Music, Inc.*, No. 02-CV-761, slip op. (N.D. Okla. Sept. 29, 2003), *aff'd*, 408 F.3d 1300 (10th Cir. 2005) attached hereto at Exhibit "1".

As in *Tillman*, the instant case arises out of the widespread corporate practice in the late 1980s and early 1990s of purchasing "broad-based, leveraged" Corporate Owned Life Insurance ("COLI") plans to take advantage of the tax-favored treatment afforded whole life insurance. As the Court summarized in *Tillman*:

> *COLI policies were purchased by numerous companies, including Fortune 500 companies, in the 1990s to take advantage of a tax loophole. Companies borrowed money from the insurer to cover the cost of the policies, took a tax deduction on the interest, and repaid the loans with proceeds from the benefits they collected when employees covered by the policies died. . . . The companies paid the premiums for COLI policies; covered employees paid nothing.*

*Tillman*, at 4-5. Wal-Mart is one of the "numerous companies" that instituted a COLI program, which commenced late in 1993 and ended early in 2000. Affidavit of Thomas G. Emerick attached hereto as Exhibit "2" at ¶ 4.

NO PLP 140131 v1
2825865-000450

The fundamental characteristic of COLI is that the corporate employer pays the premium for, and is the beneficiary of, life insurance on the lives of employees. Affidavit of Thomas G. Emerick at ¶ 2. As noted above in *Tillman*, changes in financial accounting requirements in the mid 1980s popularized what are known as "broad-based" leveraged COLI programs, a tax driven transaction through which a corporate employer purchases insurance policies on the lives of an actuarially predictable population of its employees. Affidavit of Thomas G. Emerick at ¶ 5.

In December, 1993, upon the advice of its insurance brokers, Wal-Mart established the Wal-Mart Stores Corporation Grantor Trust ("Trust") in Georgia to act as the legal holder of, and recipient of performance under, any COLI policies to be issued insuring the lives of Wal-Mart employees residing in virtually all fifty states. Affidavit of Thomas G. Emerick at ¶ 6-7. From December 1993 until July 1995, the Trust periodically purchased, from AIG and Hartford Life Insurance Company ("Hartford"), COLI policies covering more than 350,000 of Wal-Mart's "associates" (employees). Affidavit of Thomas G. Emerick at ¶ 7. COLI policies purchased from AIG insured hourly-rate employees; whereas, those purchased from Hartford insured salaried employees. Affidavit of Thomas G. Emerick at ¶ 8. The first block of AIG COLI policies, purchased on December 28, 1993 (the "1993 AIG COLI Policies"), insured 197,180 hourly-rate employees of Wal-Mart.

In purchasing these COLI policies, through the Trust, Wal-Mart provided AIG and Hartford with basic information on employees, consisting only of the following: name, social security number, sex, date of birth, state and zip code of residence, and annual compensation. Affidavit of Thomas G. Emerick at ¶ 15. Significantly, <u>all of the premiums and other costs of the COLI policies the Trust purchased were funded by Wal-Mart; the COLI policies did not cost Wal-Mart's employees anything.</u> Affidavit of Thomas G. Emerick at ¶ 9.

NO PLP 140131 v1
2825865-000450

The Wal-Mart COLI plans were "experience rated," meaning that the actual "cost of insurance" was adjusted periodically to account for actual mortality experience within the pool of insured associates. As described in the Affidavit of Thomas G. Emerick, the policies were designed in such a way as to assure that <u>Wal-Mart would not and could not benefit from the deaths of insured employees</u> and that the financial benefits to the company would flow from favorable tax treatment and would be enhanced (that is, would continue to accrue) by the continued lives of the insured employees rather than their deaths. The policies were permanent whole life insurance policies and were not renewable from year to year, but were designed to accumulate cash value through payment of premiums and remain in effect throughout the life of the insured employee. Affidavit of Thomas G. Emerick at ¶ 8 and 24.

The plaintiff in this case purports to be the representative of the estate of a former Louisiana Wal-Mart associate who was allegedly covered by a Wal-Mart COLI policy. Plaintiff brings this action based on two theories: that the above arrangement violates La. R.S. 22:613 et seq.; or, presumably, in the alternative, that plaintiff is entitled to the COLI insurance proceeds received by Wal-Mart under the notion of unjust enrichment. Pretermitting the viability of a claim under La. R.S. 22:613, it is clear that plaintiff cannot satisfy most, if not all, of the elements for unjust enrichment [the lack of a single element being fatal], and the instant motion for summary judgment should, therefore, be granted.

Indeed, in *Tillman,* the court granted summary judgment for the defendant on a virtually identical theory of violation of the Oklahoma concept of unjust enrichment, arising from the defendant's purchase of a COLI policy insuring the life of its employee. *Tillman,* at 28. Likewise, in *Lewis v. Wal-Mart Stores, Inc.*, No. 02-0944, 2005 WL 3263377 (N.D. Okla. Dec. 1, 2005) (yet another COLI case), the court found that plaintiff could not maintain a claim for

unjust enrichment. In the wake of *Tillman* and *Lewis*, and under well-settled Louisiana jurisprudence, plaintiff's unjust enrichment claim against Wal-Mart also must fail.

II.     **Wal-Mart is Entitled to Summary Judgment on the Unjust Enrichment Claim.**

To reiterate, an action for unjust enrichment exists if:

(1)     A defendant has been <u>enriched</u> by its conduct;

(2)     The plaintiff has suffered <u>impoverishment</u>;

(3)     There is a <u>connection</u> between the enrichment and the impoverishment;

(4)     There was an absence of cause or justification for the enrichment and impoverishment; *and*

(5)     There is no other remedy of law, *i.e.*, the action is subsidiary or corrective in nature.

La. Civ. C. art. 2298 (emphasis added); *Drs. Bethea Moustoukas and Weaver, LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 407 (5th Cir. 2004); *Minyard v. Curtis Products, Inc.*, 205 So.2d 422, 432 (La. 1967).

A.     **Plaintiff Cannot Show She Was "Impoverished."**

The "impoverishment" element of plaintiff's unjust enrichment claim is premised upon either a theoretical "usurpation" of the deceased's identity (Amended Complaint, ¶ 26 <u>et seq</u>.), or Wal-Mart's alleged receipt of insurance proceeds. *See* plaintiff's Answer to Interrogatory No. 16, attached hereto as Exhibit "3." Neither theory avails to establish the requisite element of an "impoverishment."

In particular, seeking to establish an "impoverishment," plaintiff bizarrely alleges in her First Amended Class Action Complaint that:

> *Dewey Bruney's identity was his property. He had the right to determine who could insure his life and profit from his death. He was entitled to license the use of his identity to serve as the basis for a life insurance policy. He was also entitled to assign any policy on his life. Through license or assignment, Dewey*

> *Bruney was entitled to demand a fee or that his estate receive a portion of the policy proceeds. Wal-Mart and the Trust took that right from Dewey Bruney when it insured his life without a license or assignment and without consideration for the use of his identity.*

As a threshold matter, this allegation is almost incomprehensible, and research could locate no jurisprudential support for possible analogous allegations of this nature which suffice to establish "impoverishment." By one reading, plaintiff appears to suggest that the "estate" or "Mr. Bruney" was deprived of the opportunity to secure life insurance of its/his own. This argument defies logic in the first instance; moreover, there is no allegation, much less any proof, that the decedent attempted to purchase a life insurance policy and could not because of the alleged conduct of Wal-Mart. This is significant because a "hypothetical loss" does not suffice to establish the elements necessary for an unjust enrichment claim. Pursuant to La. Civ. Code art. 2298, the measure of damages for unjust enrichment is the lesser of the enrichment or the impoverishment. If the impoverishment is hypothetical, it does not exist. As a result, plaintiff cannot prevail under her hypothetical theory of unjust enrichment, and the claim should be dismissed.

*Tillman* and *Lewis* also demonstrate the obvious and fatal flaws in plaintiff's claim for unjust enrichment. Indeed, the notion that plaintiff was impoverished by Wal-Mart's "unauthorized" use of her husband's personal information to obtain the COLI policy -- notwithstanding that this alleged impoverishment is not personal to plaintiff or the Estate – is the very same theory that was similarly rejected in previous COLI litigation. Specifically, the *Tillman* Court viewed the allegation as sounding in invasion of privacy, while the *Lewis* Court viewed the allegation as another version of plaintiff's misappropriation claim. *See Tillman*, 408 F.3d at 1309; *Lewis* at *21. Either way, there exists in Louisiana an adequate remedy at law

NO PLP 140131 v1
2825865-000450

sufficient to defeat any claim for equitable relief. As the Tenth Circuit held in *Tillman*, "[h]ad plaintiff properly pled invasion of privacy as one of the bases for the unjust enrichment claim, Plaintiff may have had another adequate remedy at law." *Tillman*, 408 F.3d at 1309, n. 9 (citations omitted); *see also Lewis* at *21 ("The Court views this argument as another version of plaintiffs' misappropriation claim, which would lend credence to the Tenth Circuit's point: where an adequate remedy at law is available to plaintiffs through another claim, the court should not invoke its equitable jurisdiction to address the unjust enrichment issue."). Hence, under this analysis, there is no "impoverishment" and the fifth prong of the Article 2298 and *Minyard* test (no other remedy at law) cannot be satisfied.

In her discovery responses, however, plaintiff does not allege this "identity usurpation" theory as her loss. Rather, when plaintiff was questioned about her purported "impoverishment," she responded as follows:

> **INTERROGATORY NO. 16:**
>
> Please identify, quantify, and describe any and all losses You contend You sustained as a consequence of Wal-Mart having held a COLI policy on Dewey Bruney.
>
> **OBJECTION:**
>
> Richard objects to this interrogatory because Wal-Mart has exceeded the limitation imposed by FED. R. CIV. P. 33(a) to twenty-five interrogatories and discrete subparts.
>
> **ANSWER:**
>
> Subject to the foregoing objection:
>
> I think Wal-Mart got the life insurance policy benefits from the policy on Dewey. The letter I got in 2005 said that the policy was for about $70,000.

- 7 -

Presumably, plaintiff is attempting to establish that Wal-Mart received a purported $70,000, and that she did not. As established *via* the attached Affidavit of Thomas G. Emerick, Wal-Mart **did not** in fact benefit *via* receipt of any insurance proceeds. The program was structured to be a net-zero payment on proceeds, and, in any event, Wal-Mart actually **lost** ten of millions of dollars on the plan. Affidavit of Thomas G. Emerick at ¶ 35. Moreover, plaintiff's discovery response misses the point. Even assuming, *arguendo*, that Wal-Mart actually received policy benefits in the amount of $70,000, it does not concomitantly mean that plaintiff was somehow deprived of the opportunity to have taken out a life insurance policy on Mr. Bruney.

In *Tillman,* the Court granted summary judgment for the defendant on an identical theory of unjust enrichment, observing:

> *"The term 'unjust enrichment' describes a condition resulting from the failure of a party to make restitution in circumstances where it is inequitable. It is a recognized ground for recovery in Oklahoma. A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another."* This Court has further observed, *"[t]o establish entitlement, plaintiff must at a minimum show either an expenditure adding to the property of another or one that saves the other from expense or loss."* (internal citations and quotations omitted).

*Tillman* at 28. *Accord, County Line Investment Co. v. Tinney,* 933 F.2d 1508, 1518 (10th Cir. 1991) (citing *McBride v. Bridges,* 215 P.2d 830, 832 (Okla. 1950)).

Applying those principles, the court summarily determined that the Tillman claim for unjust enrichment could not be sustained, because Camelot Music, having paid all premiums for the COLI policy on Mr. Tillman's life, "obtained no benefit at Felipe Tillman's expense, and thus, plaintiff has no equitable basis to expect restitution." *Tillman* at 28. Additionally, *"Felipe Tillman suffered no wrong as a result of Camelot's decision to insure his life."* *Id.*

- 8 -

Consequently, said the court, sustaining the claim for unjust enrichment would mean "the estate would receive an unmerited windfall." *Id. See also, Lewis* at 20-21 (citing *Tillman* and likewise rejecting plaintiff's claim for unjust enrichment).

In a similar vein, Louisiana jurisprudence has held that "[p]ayment by a debtor to the wrong person does not impoverish the creditor at all because the creditor's credit is not in any way diminished by the debtor's mistaken payment." *Louisiana & Southern Life Ins. Co. v. New Orleans S.S. Ass'n*, 384 So.2d 594, 595 (La.App. 4th Cir. 1980); *see also Barton Land Company v. Dutton*, 541 So.2d 382, 383-84 (La.App. 2nd Cir.), *writ denied,* 543 So.2d 23 (La. 1989); *Win Oil Co., Inc. v. UPG, Inc.*, 509 So.2d 1023, 1026 (La.App. 2nd Cir. 1987); *Johnson v. Hospital Affiliates Int., Inc.*, 416 So.2d 207, 209 (La.App. 1st Cir. 1982); *Nelson v. Young*, 223 So.2d 218, 233 (La.App. 2nd Cir. 1969), *modified on other grounds*, 234 So.2d 54 (La. 1970). In other words, regardless of whether or not Wal-Mart received a "windfall" from the COLI payment (which it did not), this "windfall" in no sense "impoverished" plaintiff.

In sum, plaintiff's unjust enrichment claim here fails for the same reasons it did in *Tillman* and *Lewis*. Wal-Mart paid all premiums on the COLI policies; whereas, the employees [including Mr. Bruney and/or his wife] paid nothing. In fact, even though employees paid no premiums, whenever Wal-Mart received COLI policy proceeds resulting from an employee's death, Wal-Mart paid the employee's designated beneficiary a "special death benefit," typically in the amount of $5,000. As such, there was no impoverishment to plaintiff. As a matter of fact and law, she cannot show that she did not receive the death benefit, "lost" anything, or was "impoverished" in any way by the COLI policy purchase. Lacking such "impoverishment," her claim must fail.

### B. There Was No "Enrichment to Wal-Mart."

Equally fatal to plaintiff's claim is the uncontested fact that Wal-Mart <u>did not make a profit on the COLI program.</u> Affidavit of Thomas G. Emerick at ¶ 35. Indeed, there was an actual loss in excess of 100 million dollars following the disallowance of the anticipated tax benefits. *See id.* Without the necessary "enrichment" from any source, it again follows that there can be no "unjust enrichment."

### C. There Is No "Connection" Between Wal-Mart's Alleged Enrichment and Plaintiff's Alleged Impoverishment.

In addition to the above findings, plaintiff cannot meet the third element of an "unjust enrichment:" requiring her to establish a connection between the alleged enrichment and alleged impoverishment. The opinion in *Olympia Co., Inc. v. Gervais F. Favrot Co., Inc.*, 342 So.2d 1275 (La. App. 4th Cir. 1977) is instructive. There, a roofing contractor, who had not been paid by a prime contractor for roofing work damaged in a storm, sought to recover alleged "excess" insurance proceeds received by the owner of the property to repair the damaged roof under the theory of unjust enrichment. The Fourth Circuit concluded that the plaintiff's claim failed to meet *Minyard's* connexity requirement:

> *We reject also plaintiff's further claim that [the owner] has been unjustly enriched by receiving proceeds from the windstorm insurer in excess of the damage caused by the hailstorm. Any claim for excessive payment is between [the owner] and its insurer, and not [plaintiff]. One of the requirements of recovery under unjust enrichment is the existence of a connection between the enrichment and the impoverishment. No connection exists between the defendant-owner and plaintiff-subcontractor in this case.*

*Id.* at 1277-78 (citations omitted). Like the subcontractor in *Olympia*, plaintiff is attempting to assert rights against a party with whom it has no connection. Plaintiff simply cannot show that she lost money, that Wal-Mart made money, or that there was any connection between the two

- 10 -

fictions. And, this is to say nothing about plaintiff's adequate remedy at law, which is also fatal to her claim for unjust enrichment.

## CONCLUSION

Put simply, plaintiff cannot show that the Defendants were in any way enriched at the expense of Wal-Mart's employees, let alone that any supposed enrichment was unjust under the circumstances. Likewise, plaintiff cannot show any loss as a consequence of the insurance arrangement. Here, as in *Tillman* and *Lewis*, sustaining the claim for unjust enrichment would stand the doctrine on its head, resulting in "an unmerited windfall" for plaintiff at the expense of Wal-Mart. Wal-Mart is entitled to summary judgment.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ**

By: /s/ Nancy Scott Degan
NANCY SCOTT DEGAN (#1819)
PAUL L. PEYRONNIN (#17744)
MATTHEW A. WOOLF (#27146)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170-3600
Telephone (504) 566-5200
Facsimile (504) 636-4000

**ATTORNEYS FOR WAL-MART STORES,
INC., WAL-MART STORES, INC.
CORPORATION GRANTOR TRUST, and
WACHOVIA BANK OF GEORGIA, N.A.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been sent via CM/ECF electronic delivery or United States mail, to all known counsel of record, this 16th day of April, 2007.

                        By:    /s/ Nancy Scott Degan